**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**EUGENE F. GRIFFITH,**

**Plaintiff,**

**v.** **Case No. 8:06-CV-1169-EAJ**

**MICHAEL J. ASTRUE,**[1]
**Commissioner of Social Security,**

**Defendant.**
**_________________________________ /**

**FINAL ORDER**

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United Sates Code, Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") finding that Plaintiff's disability had ceased.[2]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Therefore, pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 17).

applicable legal standards. See 42 U.S.C. § 405(g) (2003). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (citations omitted).[3]

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**I.**

On November 12, 1994, the Commissioner found that Plaintiff was disabled due to Plaintiff's severe mental impairment which met the criteria of Listing 12.04, Affective Disorders, and awarded Disability Insurance Benefits ("DIB"). (T 18-19) Plaintiff was found disabled based on multiple inpatient hospitalizations for depression and bipolar disorder. (T 47)

Thereafter, on September 25, 2002, the Social Security Administration ("SSA") found that, after a continuing review, Plaintiff had exhibited medical improvement and was no longer disabled. (T 43-47) Plaintiff requested that the Commissioner reconsider his case (T 48), and Plaintiff was again found to be no longer disabled. (T 64-74)

---

[3] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981).

A hearing was held before the ALJ on May 10, 2005. (T 386) In a decision dated October 14, 2005, the ALJ found that Plaintiff exhibited medical improvement and is no longer disabled. (T 17-27) The ALJ determined that Plaintiff has not engaged in substantial gainful activity at any time since the onset of his disability, and found that Plaintiff's "right hip osteoarthritis" is a current "severe" impairment but that Plaintiff has no impairment which meets or medically equals the severity of an impairment listed in Appendix 1, Subpart P, Regulations No. 4. (T 26) The ALJ also found that since November 12, 1994, the comparison point date ("CPD") for the decision, Plaintiff has exhibited medical improvement related to the ability to work. (Id.) Further, the ALJ determined that Plaintiff's allegations regarding the severity of his symptoms are not entirely credible. (Id.) The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform a wide range of medium work activity "as long as he never climbs ladders, ropes and scaffolds, and can occasionally stoop and crouch." (T 25)

Relying on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff is not able to perform his heavy past relevant work as a concrete block mason, institutional cleaner, or construction worker. (T 26) While noting that Plaintiff's education is limited and that Plaintiff is closely approaching advanced age, the ALJ found that "[t]he issue of transferability of work skills is not material to this decision." (T 27) Using the Medical Vocational Guidelines, Rules 203.06 and 203.07 as a framework, the ALJ determined that there are a significant number of jobs in the national economy that Plaintiff can perform. (Id.) Specifically, the ALJ determined that Plaintiff could perform jobs of cleaner II, assembler, and bagger. (T 25) Therefore, the ALJ decided that Plaintiff was no longer disabled as of September 2002. (T 27)

On April 24, 2006, the Appeals Council declined to review the ALJ's decision, making the

ALJ's decision the final decision of the Commissioner. (T 3-5) Plaintiff filed a timely petition for judicial review of the Commissioner's termination of benefits. Plaintiff has exhausted all administrative remedies and the Commissioner's decision is ripe for review under the Act.

Most of the medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

**II.**

Plaintiff raises two issues on appeal: (1) the Commissioner erred in finding that Plaintiff's mental impairments are no longer severe; and (2) the Commissioner erred in concluding that Plaintiff retains the RFC for a wide range of medium work activity.

**A.** Plaintiff argues that the ALJ erred in finding that Plaintiff's mental impairments are no longer severe (Dkt. 14 at 10). Plaintiff contends that, in finding medical improvement, the ALJ completely disregarded the mental treatment notes and assessment of Jeffrey Beams, M.D. ("Dr. Beams"), Plaintiff's treating psychiatrist, and relied on the single mental status evaluation of Sharad R. Lakdawala, M.D. ("Dr. Lakdawala").

The Social Security Act provides that an individual who has been awarded disability benefits may be determined to be no longer entitled to benefits only upon a finding that there has been a medical improvement in the individual's impairment and that the individual is able to engage in substantial gainful activity. 42 U.S.C. § 423(f)(1). Under the regulation, medical improvement is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled . . . ." 20 C.F.R. § 404.1594(b)(1). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) . . . ." Id. However, as determined by the Eleventh Circuit in Simpson v. Schweiker,

691 F.2d 966, 969 (11th Cir. 1982), benefits cannot be terminated unless there is evidence of improvement to the extent that the plaintiff's disability has ceased.

The point of comparison for determining if there has been improvement is "the time of the most recent favorable medical decision" under 20 C.F.R. § 404.1594(b)(7). The medical improvement standard is outlined in the regulations as follows:

(1) Is the individual engaging in substantial gainful activity?

(2) Does the individual have an impairment which meets or equals the severity of an impairment listed in Appendix 1 of the regulations?

(3) Has there been medical improvement?

(4) If so, is it related to the ability to work?

(5) If there has been no medical improvement, do any exceptions to the medical improvement standard exist?

(6) If there has been medical improvement related to the ability to work or if one of the first group of exceptions to medical improvement applies, does the individual have a severe impairment or combination of impairments?

(7) Can the individual do past relevant work?

(8) Can the individual do any other work?

20 C.F.R. § 404.1594(f).

Evidence of improvement is necessary to support a termination of benefits. Vaughn v. Heckler, 727 F.2d 1040, 1043 (11th Cir. 1984) (internal quotation marks and citation omitted) ("After a final determination of disability, if a termination of benefits were effected without a showing of either improvement or newly discovered evidence, such termination would necessarily be based on whim or caprice or would constitute an impermissible relitigation of facts and determination already finally decided."). Further, the ALJ must evaluate and compare the prior and current medical evidence of disability. 20 C.F.R. § 404.1594(b)(7); Williams v. Apfel, 73 F. Supp.

2d 1325, 1337 (M.D. Fla. 1999) (citing Vaughn, 727 F.2d at 1043). Without a comparison to the current condition, no adequate finding of improvement can be rendered. Id. Merely referring to the current evidence without performing a comparison is insufficient. McAulay v. Heckler, 749 F.2d 1500, 1501 (11th Cir. 1985).

"Once the claimant has introduced evidence that his or her condition remains essentially the same as it was at the time fo the earlier determination, the claimant is entitled to the benefit of a presumption that his or her condition remains disabling. . . . The presumption of a continuing disability does not affect the ultimate burden of proof. It imposes on the SSA only the burden of going forward with evidence to rebut or meet the presumption. . . . Once the burden to come forward has shifted to the SSA, the Secretary must present evidence that there has been sufficient improvement in the claimant's condition to allow the claimant to undertake gainful activity." Williams, 73 F. Supp. 2d at 1337 (internal quotation marks and citations omitted).

The ALJ correctly determined the comparison point decision ("CPD") date was November 12, 1994, the date of the most recent decision favorable to Plaintiff. (T 18) On that date, the SSA determined that Plaintiff's mental condition met Listing 12.04, Affective Disorders, based on a diagnosis of bipolar disorder with psychotic features and a mixed personality disorder with dependent passive-aggressive features. (T 18-19, 68) At the time of the CPD, Plaintiff had been hospitalized numerous times for his mental condition. (T 19)

In September 2002, the SSA reviewed Plaintiff's continuing entitlement to DIB. (T 46) The SSA considered reports from Arthur Pettygrove, M.D. ("Dr. Pettygrove"), West Bay Chiropractic and Wellncess Center, St. Joseph's Hospital, and Dr. Lakdawala. (Id.) Based on this review, the SSA determined that plaintiff's medical condition had improved based on "current mental status exam shows depression is no longer severe, concentration and memory are intact, and thought processes

are relevant. Current physical exam show atypical chest pain with no evidence of ischemia on bruce exercise stress test." (T 47) Accordingly, the SSA found that Plaintiff's disability ended in September 2002 because "current medical findings show medical improvement related to the ability to work and function without severe mental or physical limitations." (T 46)

Plaintiff then requested review before a disability hearing officer ("DHO"). In conjunction with a hearing on August 13, 2003, the DHO reviewed the medical reports from the CPD, as well as Dr. Lakdawala's report dated June 19, 2002, medical records from Dr. Pettygrove dated January 1999 to August 2002, medical records from St. Joseph's Hospital dated June and July 2002, LabCorp records dated March 2000 to August 2002, an Advisory Physical Residual Functional Capacity Assessment dated March 2003, and an Advisory Psychiatric Review Technique form dated March 3, 2003. (T 74) The DHO determined that based on Plaintiff's testimony at the hearing and the medical evidence of record, Plaintiff's mental disorder no longer met or equaled a listed impairment. (T 68, 70) Further, the DHO found medical improvement related to the ability to do work. (T 70, 71)

Plaintiff subsequently requested review of the decision by an ALJ. (T 77) In September 2003, Plaintiff began seeing Dr. Beams for mental treatment. Plaintiff saw Dr. Beams through January 2004. (T 290-300) In May 2005, Dr. Beams completed a Mental Residual Functional Capacity form ("MRFC") on Plaintiff, where Dr. Beams concluded that Plaintiff had marked limitation in the areas of social interaction, sustained concentration and persistence, and adaption. (T 366-68) Dr. Beams stated that Plaintiff's impairment lasted or is to be expected to last twelve months or more, but also noted that Plaintiff is capable of managing his own funds. (T 369)

In arriving at his decision, the ALJ had the benefit of Dr. Beams' treatment notes and records, as well as the MRFC. (T 19) The ALJ did not credit Dr. Beams' opinion regarding

Plaintiff's mental condition. Specifically, the ALJ rejected Dr. Beams' opinion that Plaintiff suffered marked difficulties in the functional areas and that Plaintiff's "condition was likely to deteriorate if Plaintif was placed under stress particularly that of a job." (T 19-20) In rejecting Dr. Beams' opinion, the ALJ reasoned that Dr. Beams' opinion was inconsistent with the other medical evidence of record, including the state agency reviewing physicians' findings in September 2002 and March 2003, and Dr. Lakdawala's assessment of Plaintiff in June 2002. (T 24)

In addition to discussing Dr. Beams' treatment notes, the ALJ noted that "the record is devoid of the claimant seeking medical treatment for his mental status between November 1994 and June 2002 when he presented to Dr. Lakdawala and was given a diagnosis of moderate major depression." (Id.) Further, the ALJ recognized that "there are no intervening office visit notes from Dr. Beams after January 26, 2004 that could support his statement dated May 3, 2005 that the claimant was totally disabled and unable to be gainfully employed (Exhibit 26F)." (Id.) Finally, the ALJ found Plaintiff's testimony concerning his mental status inconsistent with the medical evidence of record. (Id.)

This appeal regarding the ALJ's finding of medical improvement presents a complex issue because, as noted by several courts, mental disorders are fluctuating conditions where various factors routinely affect the severity of symptoms. E.g., Baguer v. Apfel, 65 F. Supp. 2d 1345, 1350 (M.D. Fla. 1991). Evaluating mental impairments in individuals with histories of mental disorders presents unique difficulties, because, over time a person's level of functioning may vary considerably. Id. Therefore, the Commissioner should evaluate medical improvement in cases of mental disorders with the utmost care, taking into account whether the evidence merely shows a temporary remission of the condition, or, whether the medical evidence reflects a significant improvement in and maintaining of the individual's level of functioning over time. See id.

In making this determination, "it is vital to obtain evidence from relevant sources over a sufficiently long period prior to the date of adjudication in order to establish the individual's impairment severity." Id. This evidence should include treatment notes from individual psychiatrists and psychologists, hospital discharge summaries, and work evaluation or rehabilitation progress notes, if available. Id. "Adequate descriptions of functional limitations must be obtained from these or other sources which may include programs and facilities where the individual has been observed over a considerable period of time." Id.

Additionally, individuals with long histories of treatment for mental disorders, which can include in-patient and out-patient care, are particularly difficult to evaluate with regards to medical improvement. Id. This is because

> [i]ndividuals with chronic psychotic disorders commonly have their lives structured in such a way as to minimize stress and reduce their signs and symptoms. Such individuals may be much more impaired for work than their signs and symptoms would indicate. The results of a single examination may not adequately describe these individuals' sustained inability to function. It is, therefore, vital to review all pertinent information relative to the individual's condition, especially at times of increased stress. It is mandatory to attempt to obtain adequate descriptive information from all sources which have treated the individual either currently or in the time period relevant to the decision.

Id. at 1350-51.

Therefore, in assessing medical improvement in individuals with mental impairments, the ALJ should consider "the longitudinal history of the impairments, including the occurrence of prior remission, and prospects for future worsening." Id. at 1351.

After careful consideration of the record in the instant case, the undersigned concludes that there is substantial evidence to support the ALJ's finding that Plaintiff experienced medical improvement in his mental condition and that Plaintiff's improvement is related to the ability to work.

First, the ALJ properly compared the original medical evidence as of the CPD and the new medical evidence as necessary to make a finding of improvement. See Vaughn, 727 F.2d at 1043. The ALJ discussed the reasoning for the SSA's finding in 1994 that Plaintiff was disabled, including his hospitalizations and his meeting the criteria of Listing 12.04. (T 19) Then, the ALJ proceeded to discuss the current medical evidence in the record, including Dr. Lakdawala's examination of Plaintiff in 2002 and Dr. Beams' treatment of Plaintiff beginning in September 2003. (T 19, 20) The ALJ also discussed the medical evidence related to Plaintiff's cardiac ailments, back pain, neck pain, hip pain, and visits to the hospital as a result of these or other physical ailments. The ALJ extensively discussed Plaintiff's treatment with Dr. Pettygrove between January 1999 and February 2004, as well as treatment by Rudolph Acosta, M.D. ("Dr. Acosta") and Daniel Murphy, M.D. ("Dr. Murphy") (T 20-22) The court finds that the ALJ applied the correct legal principles in determining that Plaintiff had experienced medical improvement since the CPD and that his impairment no longer met or equaled the Listing.

Regarding the ALJ's finding that Plaintiff's mental impairment is no longer severe, Plaintiff argues that the ALJ completely disregarded Dr. Beams' more recent and substantial assessment of Plaintiff and only relied on Dr. Lakdawala's earlier, single evaluation of Plaintiff (Dkt. 14 at 11). Plaintiff argues that the ALJ chose not to give Dr. Beams' findings any weight because Plaintiff had not started mental treatment with Dr. Beams until September 2003 and no intervening office visit notes existed between Plaintiff's January 2004 visit and the May 2005 visit (Id.)

Although a treating physician's opinion is generally entitled to considerable weight,[4]

[4] A treating physician's opinion will be accorded controlling weight if it is supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2).

Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), the ALJ may reject the opinion of a treating physician if it is conclusory, contrary to the evidence, or unsubstantiated by any objective medical evidence. Bloodsworth v. Heckler, 703 F.2d 1233, 1240 (11th Cir. 1983); accord Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991). The ALJ is required to state with particularity the weight given to different medical opinions and the reasons therefor. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (citation omitted). Contrary to Plaintiff's argument, the ALJ specifically discussed his consideration of Dr. Beams' treatment of Plaintiff.

The ALJ specifically stated that he rejected Dr. Beams' opinion for several reasons. First, the ALJ explained that Plaintiff's testimony concerning his mental impairment and its effect on his ability to work was not entirely credible considering the discrepancies between Plaintiff's assertions and the discrepancies in the medical evidence. (T 24) The ALJ explained that one such discrepancy was Dr. Beams' finding that Plaintiff had marked limitation in many areas of functioning; the ALJ concluded this finding was not congruent with Plaintiff's testimony regarding his daily activities. Further, the ALJ noted that Dr. Beams' findings were in direct conflict with those of three other consulting physicians: Dr. Lakdawala, who examined Plaintiff in June 2002, and the state agency consulting psychiatrist and psychologist, who in September 2002 and March 2003, respectively, found that Plaintiff's impairments were not severe.[5] (T 19, 22-23, 250, 268) The ALJ also noted no

[5] In June 2002, Plaintiff visited Dr. Lakdawala, who diagnosed Plaintiff with moderate major depression and dependence on alcohol. (T 226-27) In September 2002 and March 2003 respectively, state agency consultants Nancy Dinwoodie, M.D. ("Dr. Dinwoodie") and Michael Stevens, Ph.D. ("Dr. Stevens") completed Psychiatric Review Technique Forms regarding Plaintiff. (T 250, 268) Both concluded that Plaintiff's suffered from moderate major depression but that the disorder is not severe. (Id.) Drs. Dinwoodie and Stevens concluded that this impairment only mildly restricted Plaintiff's functional areas of activities of daily living, maintaining social functioning, and concentration, persistence, or pace; they also found no limitation in the area of episodes of decompensation. (T 260, 278)

office visits to Dr. Beams between January 26, 2004 and May 3, 2005, when Dr. Beams completed the MRFC. (T 24)

Plaintiff asserts that in affording Dr. Beams' opinion little weight, the ALJ improperly relied on the fact that between November 1994 and June 2002 the record is devoid of information related to Plaintiff's mental health treatment history. It is true that Plaintiff's failure to seek mental health treatment during this time is not evidence of medical improvement. See Rice v. Chater, 86 F.3d 1, 2-3 (1st Cir. 1996). The standard under the regulations for assessing medical improvement is *changed symptoms, signs and laboratory findings*. Id. at 2 (citing 20 C.F.R. § 404.1594(b)(1) & (7), (f)(3)) (emphasis in original). While there are no records directly relating to mental health treatment during the time period between the CPD and Dr. Lakdawala's assessment, medical records do exist, however, that relate to Defendant's cardiac history and treatment as well as his treatment for neck, back, hip, and other pain related to his automobile accident in July 2002. (T 201, 205, 228, 241, 265, 301) None of these medical records reflect any complaints of or treatment for mental disorders.

Moreover, these medical records relating to Plaintiff's cardiac and pain treatment reveal that in June 1999, Dr. Pettygrove saw Plaintiff for chest pain and noted that Plaintiff looked well, was smiling, and was under no distress. (T 307A) In October 2000, Dr. Pettygrove saw Plaintiff for discomfort the right hip and thigh. Dr. Pettygrove stated that Plaintiff "looks well, healthy, smiling, afebrile, laughing, in no distress." (T 306A) Dr. Pettygrove again noted in March 2001 that Plaintiff "looks well, healthy, smiling, laughing, in no distress" during a visit where Plaintiff complained of retrosternal discomfort after eating spicy food and popcorn. (T 305A) In December 2001, Dr. Pettygrove reported that Plaintiff "looks very healthy, smiling, in no distress" after Plaintiff complained of pain in his right upper back. (T 305) These records are therefore consistent with Dr. Lakdawala's June 2002 findings that Plaintiff was cooperative, coherent, and well-oriented, with

no delusions or hallucinations and memory intact. (T 19)

The undersigned has carefully considered the ALJ's analysis of the severity of Plaintiff's bipolar disorder mindful of the difficulties of assessing medical improvement in individuals with mental impairments. In finding that Dr. Beams' May 2005 MRFC assessment regarding Plaintiff's functional limitations was inconsistent with and not supported by the medical evidence of record, the ALJ properly exercised his fact-finding role in weighing the evidence and resolving any inconsistencies in the evidence. It is not for the court to re-weigh the evidence if the ALJ applied the proper legal principles. Goodley, 608 F.2d at 236. Plaintiff has not demonstrated any error in the ALJ's consideration of Dr. Beams' medical opinion, and there is substantial evidence to support the ALJ's finding that Plaintiff's mental impairment is no longer severe as defined under the Act.

**B.** Plaintiff also alleges that the ALJ erred in finding that Plaintiff could perform a wide range of medium work.[6] Plaintiff contends that the ALJ based his findings regarding Plaintiff's RFC on the ALJ's own observation of Plaintiff and Plaintiff's testimony regarding his daily activities, essentially arguing that the ALJ improperly engaged in "sit and squirm jurisprudence" (Dkt. 14 at 14). Moreover, Plaintiff argues, the ALJ's analysis failed to address the physical capacity evaluation ("PCE") completed by Daniel Murphy, M.D. ("Dr. Murphy"), Plaintiff's treating orthopaedic physician, which does not support a finding that Plaintiff can perform medium work.

The Commissioner concedes that the ALJ did not discuss the PCE completed by Dr. Murphy; however, the Commissioner contends that the ALJ's failure to address this form does not warrant

---

[6] Medium work is defined in the regulations as involving the "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567, 416.967 (2005). A person who can do medium work can also perform sedentary or light work. Light work requires a good deal of walking or standing, or can involve sitting most of the time with some pushing and pulling of arm or leg controls. Sedentary work involves sitting with walking and standing required only occasionally. Id.

remand because the ALJ was not required to adopt Dr. Murphy's form as Plaintiff's RFC (Dkt. 15 at 14). Contrary to the Commissioner's argument, the ALJ's failure to address Dr. Murphy's PCE form in the hearing decision cannot be deemed harmless error.

A determination of a claimant's residual functional capacity is a decision reserved for the Commissioner. See generally 20 C.F.R. §§ 404.1545, 404.1546. In this case, the ALJ found that Plaintiff can perform a wide range of medium work as long as Plaintiff "never climbs ladders, ropes and scaffolds, and can occasionally stoop and crouch." (T 25, 26) Before making this determination, the ALJ discussed Plaintiff's medical records as well as Plaintiff's testimony and demeanor at the administrative hearing.

In the hearing decision, the ALJ discusses Plaintiff's visits to Dr. Murphy from December 2004 to April 2005. (T 22) On December 21, 2004, Dr. Murphy gave Plaintiff an injection in his right shoulder after x-rays revealed arthritis in the shoulder. (T 364) A subsequent scan of the shoulder revealed rotator cuff tenderness and possible SLAP lesion, for which Dr. Murphy recommended physical therapy. (T 347, 362) Dr. Murphy later assessed Plaintiff's shoulder as having a full range of motion but pain on extremes range of motion. (T 362) On February 23, 2005, Dr. Murphy discussed surgery with Plaintiff, to which Plaintiff responded he would like to continue physical therapy. (T 361)

On February 25, 2005, Dr. Murphy x-rayed Plaintiff's hip and pelvis after Plaintiff reported pain in his right hip. The diagnosis was severe osteoarthritis in the right hip with mild to moderate degenerative disease in the lumbar spine. (T 359) Dr. Murphy examined Plaintiff's right hip which revealed a limited range of motion and pain in the groin on range of motion but no significant tenderness about the hip. (Id.) After advising Plaintiff of the treatment options, Dr. Murphy advised Plaintiff to return in three to four weeks after trying the use of a cane, glucosamine, and Ibuprofen.

(Id.) On April 21, 2005, Plaintiff reported to Dr. Murphy that he was unable to walk because of pain. (T 372) Again, x-rays of the hip showed severe arthritis, to which Dr. Murphy recommended total hip replacement. (Id.)

On April 28, 2005, Dr. Murphy completed the PCE form. (T 370) Dr. Murphy opined that Plaintiff can stand and walk less than one hour in an eight-hour work day, and that Plaintiff can sit less than six hours in an eight-hour work day. (Id.) Further, Dr. Murphy concluded that in an eight-hour work day, Plaintiff can occasionally lift/carry a maximum of eleven to twenty pounds, and can only frequently lift/carry a maximum of less than ten pounds. (Id.) According to Dr. Murphy's evaluation, Plaintiff can occasionally bend, kneel, crawl, and climb stairs, but can never squat or climb ladders. (T 371) Finally, Dr. Murphy opined that Plaintiff is able to tolerate stress, has mild limitation in his ability to perform activity within a schedule, maintain regular attendance, and be punctual; and is mildly limited in his ability to complete a normal work day and work week without interruptions from medically based symptoms and to perform at a consistent pace without unreasonable and number and length of rest periods. (Id.)

In his opinion, the ALJ found that Plaintiff's allegations of continuous, disabling pain were contradicted by Plaintiff's testimony at the May 10, 2005 hearing that he worked part-time cleaning up yards and construction sites, cut the grass, walked the dog, did the laundry, grocery shopping, and walked in the mall with his daughter. (T 24) The ALJ also noted that, although Plaintiff testified he was unable to sit for prolonged periods of time, Plaintiff remained seated for three quarters of an hour during the administrative hearing. (Id.) The ALJ mentioned that he did not observe any facial gestures, grimaces of pain, or significant difficulty during the hearing, and that Plaintiff walked out of the hearing at its conclusion with a slight limp but no other difficulty observed. (T 24-25)

"Sit and squirm jurisprudence" is where the ALJ evaluates a claimant's disability based on

whether the claimant's behavior at the administrative hearing comports with the ALJ's subjective expectations for observable symptoms. See Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982). However, the ALJ may consider the claimant's appearance and demeanor during the hearing among other criteria in making credibility determinations, so long as the ALJ does not use his observations to reject objective medical evidence. Norris v. Heckler, 760 F.2d 1154, 1158 (11th Cir. 1985).

Similarly, the Commissioner may properly rely on a claimant's daily activities, among other evidence, in determining whether a claimant is entitled to disability benefits. Johnson v. Barnhart, 268 F. Supp. 2d 1317, 1328 (M.D. Fla. 2002) (citations omitted); see also Markham v. Califano, 601 F.2d 533, 534 (10th Cir. 1979). However, the ability to engage in everyday activities of short duration such as housework or fishing does not disqualify a claimant from receiving disability benefits. Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997).

It is well settled that credibility determinations are the province of the Commissioner. Carnes v. Sullivan, 936 F.2d 1215, 1219 (11th Cir. 1991) (citation omitted). The ALJ extensively recounted Plaintiff's testimony as to why he cannot work. The ALJ stated, in pertinent part:

> [Plaintiff] stated he was unable to work because of right hip pain, right shoulder treatment, hypertension and inability to deal with people. He stated he was to have a right hip replacement next month as there was only bone on bone. He testified he had a rotator tear in his right shoulder but his hip was worse . . . . He stated Lithium made him shake and he was unable to tolerate Prozac. He testified when he felt he did not want to deal with people he got away from them if possible. . . . He alleged an inability to sit, stand or walk for any prolonged periods of time. He testified he could lift 15 pounds with his right hand and about 40 pounds with his left hand. He stated he was able to drive but got pain in his right leg sometimes. . . . He stated the last few weeks he did not have anything to drink as he was on medication.

(T 23) The ALJ then recounted Plaintiff's testimony regarding his daily activities and later briefly noted the ALJ's observations of Plaintiff during the administrative hearing. (T 24-25)

After evaluating the medical evidence and Plaintiff's testimony, the ALJ determined that Plaintiff's testimony regarding the aggregate of his daily activities was not consistent with his subjective complaints of pain in light of the objective medical records and Plaintiff's description of his daily activities and lifestyle. (T 24) Plaintiff's demeanor at the hearing was only one of several factors which the ALJ relied on in finding Plaintiff not fully credible. Therefore, the ALJ did not engage in improper "sit and squirm jurisprudence."

However, a credibility determination is not the same as a residual functional capacity analysis. While the ALJ did discuss Plaintiff's visits to Dr. Murphy and Dr. Murphy's diagnoses, the ALJ did not discuss the PCE form completed by Dr. Murphy or weigh this evidence with the other medical evidence of record. Further, the ALJ did not explain how he arrived at the conclusion that Plaintiff is capable of performing a wide-range of medium work, other than citing Plaintiff's daily activities.

As previously discussed, the ALJ is required to state with particularity the weight given to different medical opinions and the reasons therefor when assessing medical evidence in a disability case. Sharfarz, 825 F.2d at 279 (citation omitted). Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject those opinions. Wiggins, 679 F.2d at 1389. The opinions of non-examining, reviewing physicians standing alone do not constitute substantial evidence, and are entitled to little weight when contrary to those of the examining physicians. Sharfarz, 825 F.2d at 280 (citation omitted).

In the hearing decision, the ALJ credited the opinions of the state agency consulting physicians regarding Plaintiff's physical impairments, stating, "Physically, at the initial and reconsideration levels, the claimant's impairments were found not severe and no exertional limitations were placed on the claimant (Exhibit 15F & 18F)." (T 23) However, nowhere in his

opinion does the ALJ discuss the PCE form completed by Dr. Murphy, nor does the ALJ articulate why he rejected Dr. Murphy's opinion regarding Plaintiff's physical limitations in an eight-hour work day. On the PCE form, Dr. Murphy specifically found that Plaintiff can occasionally lift/carry a maximum of eleven to twenty pounds in an eight-hour work day and frequently lift/carry a maximum of less than ten pounds. (T 370)

These limitations assigned by Dr. Murphy are in direct conflict with the requirements of medium work activity, which involves the "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."[7] 20 C.F.R. §§ 404.1567, 416.967 (2005). Additionally, the ability to do medium work encompasses the ability to do light work, which includes a good deal of walking or standing. Id. Dr. Murphy found that Plaintiff can stand and walk less than one hour per day in an eight-hour work day. (T 370)

The ALJ's failure to discuss Dr. Murphy's physical capacity evaluation of Plaintiff was error because, as Dr. Murphy was a treating physician, the ALJ was required to assign considerable weight to Dr. Murphy's opinion absent good cause to reject the opinion. The hearing decision not only fails to articulate the ALJ's reasoning for rejecting Dr. Murphy's opinion, but fails to articulate the ALJ's reasoning for assigning Plaintiff a wide range of medium work activity. Further, the opinion suggests that the ALJ's determination of Plaintiff's physical RFC was based solely on the ALJ's credibility determination. The ALJ's failure to weigh the medical evidence in determining Plaintiff's physical RFC was in error.

Thus, remand is required on this issue to allow the ALJ to apply the proper legal standard

---

[7] Nowhere in his opinion does the ALJ cite support for the finding that Plaintiff can lift up to fifty pounds other than Plaintiff's own testimony that "he could lift 15 pounds with his right hand and about 40 pounds with his left hand." (T 23)

in determining Plaintiff's physical RFC and whether this prevents Plaintiff from performing any substantial gainful activity. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993) (citation omitted) (reversal with remand to Secretary warranted where the ALJ has failed to apply the correct legal standards). On remand, the ALJ shall specifically explain the weight accorded Dr. Murphy's opinion and the reasoning therefore.

**III.**

Remand is necessary to allow the ALJ to apply the proper legal standards in the determination of Plaintiff's physical RFC. On remand, the parties shall be afforded an opportunity to present additional evidence on the issues remaining for determination. The court expresses no view as to what the result should be on remand.

Accordingly and upon consideration, it is **ORDERED AND ADJUDGED** that:

(1) the decision of the Commissioner is **REVERSED** and the case **REMANDED** under sentence four for further proceedings and consideration consistent with the foregoing; and

(2) the Clerk of Court shall enter final judgment in accordance with 42 U.S.C. § 405(g) as a "sentence four" remand and close the file, with each party bearing its own costs and expenses.

**DONE AND ORDERED** in Tampa, Florida this 7th day of June, 2007.

ELIZABETH A JENKINS
United States Magistrate Judge